Filed 6/18/14  P. v. Davis CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>ROBERT EDWARD DAVIS,<br><br>        Defendant and Appellant. | C074092<br><br>(Super. Ct. No. 11F04134) |

On June 4, 2011, an armed man wearing a hooded sweatshirt and a bandana covering his face entered three different businesses -- a thrift shop, a Taco Bell, and a gas station market -- and demanded money.  Eyewitness accounts, clothing recovered by police, video surveillance footage from each of the incidents, and phone calls he made while in police custody linked defendant Robert Edward Davis to the crimes.

Defendant was charged with multiple counts of robbery in two separate cases. Prior to trial, the People filed a motion to consolidate the two cases.  The trial court granted the motion over defendant's objection.  The jury found defendant guilty of three counts of second degree robbery and two counts of attempted second degree robbery.

1

On appeal, defendant contends the trial court abused its discretion when it consolidated the two cases. Defendant also argues the consolidated trial violated his right to a fair trial. We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I

*The Thrift Store Robbery*

On June 4, 2011, at 2:00 p.m., an "African-American" man wearing a "gray" or "black" hooded sweatshirt, a "black beanie" underneath the sweatshirt, and a "dark bandana" or "scarf" covering his face entered The Thrift Store.[1] The man walked up to the cash registers, where two clerks were standing, pulled out a "black, shiny" long-barreled[2] gun, and said "I want your money. I'm not playing" to one of the clerks. After failing to take money from the first register, the man pointed the gun at the other clerk and unsuccessfully attempted to take money out of the other register. He left The Thrift Store without taking any money. At trial, both clerks viewed surveillance footage and testified that it accurately depicted the attempted robbery.

### II

*Taco Bell Robbery*

Approximately 30 minutes after the attempted robbery at The Thrift Store, a "black [man] . . . [wearing] a dark gray sweatshirt" "with the hood over his head," "dark jeans," "a blue scarf across his face" and a "revolver with a long barrel," walked into a Taco Bell. The man walked to the cashier, pulled out the long-barreled "pistol," which looked like a "cowboy gun," and told the shift manager, "[g]ive me the money or I'll

---

[1] The Thrift Store is the name of a thrift shop located in Sacramento.

[2] The second clerk could only describe the pistol as "long-barreled."

shoot." The shift manager handed him $177 and the man left. At trial, the shift manager viewed surveillance footage and testified that it accurately depicted the robbery.

### III

### *Hites Market Robbery*

At approximately 6:00 p.m. on the same day, an "African-American" man wearing a "gray" or "black" hooded sweatshirt, "black [beanie] cap," and a "[gray] bandana" "tied around his nose and mouth," entered Hites Market. The man walked toward the counter of the store, pulled out a "black-colored revolver" with a "longer barrel" that was either a ".38 or .357," and told the two clerks "[y]ou know what this is, you know what this is," indicating it was a robbery. The clerk who was standing behind the cash register retrieved approximately $200 to $300 from the register, while the man held the gun on the other clerk and told him not to move. The man took the money from the clerk then left Hites Market.

Immediately after the robbery, one clerk grabbed a pistol from inside the store and led the other clerk outside to "try to hold" the man who robbed them. Both clerks ran out the door and the clerk carrying the gun yelled "[f]reeze" or "[h]old on" to the man. As the man turned toward the clerks with his gun drawn, the clerk shot him, and the man ran away. The clerks continued to pursue the man and saw him again with his mask and hood off. The man fired four to five shots at the clerks and fled.

Defendant was admitted to Kaiser Hospital with a gunshot wound about 20 minutes after the Hites Market robbery occurred. Around the same time, police, who arrived at Hites Market, took the clerks to the same hospital to identify a man with a gunshot wound who police thought was the robbery suspect. Because defendant was in surgery, the clerks could not identify him as the robbery suspect. The police then took the clerks back to Hites Market to inspect clothing found on the robbery suspect at the hospital and discovered in a lot behind Hites Market. The clerks identified a "black hooded sweatshirt or jacket" with a "Carhartt emblem on the [left-hand] side of it" and a

3

bullet hole in it, a "black skull cap or beanie," a "gray piece of cloth," "a pair of jeans," a gray shirt with a bullet hole in it, basketball shorts, and underwear as the clothes defendant wore during the robbery. The police also showed both clerks a six-photograph lineup within one to two hours of the robbery and both clerks identified defendant's photo.

At trial, one of the clerks viewed surveillance footage and testified that it accurately depicted the robbery. Both clerks also testified that they clearly saw the robber after his mask and hood were off and it was defendant.

IV

*Police Officer Testimony Regarding The Robberies*

Sacramento Police Officer Pamela Prather saw defendant at the hospital after he was admitted for a gunshot wound approximately 20 minutes after the Hites Market robbery. Officer Prather also viewed hospital surveillance footage of defendant arriving and testified defendant was wearing "dark" clothes.

Detective Joseph Ellis viewed the surveillance footage from The Thrift Store and Taco Bell robberies and still photos from the surveillance footage of the Hites Market robbery. In both The Thrift Store and Taco Bell robberies, Detective Ellis testified that the man was "African-American," and was "wearing the exact same clothing," "black hooded sweatshirt [with] . . . a white or very light colored emblem on the left breast of the sweatshirt," black or dark blue "basketball style shorts," bright or light blue tennis shoes, and had a "dark-colored revolver." Detective Ellis also testified that the suspect in the Hites Market robbery appeared to be the same person who robbed The Thrift Store and Taco Bell because the person was wearing the same "black hooded sweatshirt [with] . . . the white- or light-colored logo on the breast," and the only difference in clothing was that he was wearing pants not shorts. Detective Ellis also testified that the gun in the surveillance footage and photos looked similar and the suspect in the footage held the gun in a similar manner, distinctive from other robberies with which the detective was

4

familiar. Specifically, he testified that the suspect held the gun in his right hand "loosely" and with a "limp wrist," which is different from other robberies where suspects generally hold the gun in their pocket or point it at the victim's face.

V

*Phone Calls Made By Defendant From Jail*

While awaiting trial, defendant made phone calls while in custody that discussed the various robberies. Over the course of the calls defendant stated, "I needed some dough . . . and . . . I did what I did and . . . I wasn't expecting . . . to have two holes in my body." "[T]hey not playing with robberies." "They have not been for a while and then I -- I discharged -- I discharged a firearm." "I heard they added two or three cases to . . . my stuff." "Yeah basically . . . it's some . . . different shit from the same day they added on. I already knew it was coming but just a matter of time." "[T]hey gonna build something, they're gonna find what they're gonna find and they found what they gonna found. And now I got three cases instead of one." At trial, the jury heard each phone call and received a written transcript of each call.

VI

*Motion To Consolidate*

Prior to trial, the People made a motion to consolidate two separate complaints that contained charges for all three robberies, arguing the crimes were all of the same class and involved some of the same evidence. In opposition to the motion, defendant argued that although "they can be joined" by statute, the evidence regarding identity was not cross-admissible under Evidence Code[3] section 1101. Although defendant admitted he had not seen all of the surveillance footage, he argued that the identification evidence was not strong enough to meet the cross-admissibility standard of section 1101.

---

**3** All further section references are to the Evidence Code.

5

Defendant argued it was improper for identification evidence from The Thrift Store and Taco Bell robberies to be "bootstrapped" with the stronger identification evidence from the Hites Market robbery. The trial court granted the motion to consolidate the two complaints because the People represented that they viewed each of the surveillance videos, the robbery suspect appeared to wear the same clothes and hold the gun in a similar manner in each of the surveillance videos, the robberies occurred on the same date, in the same geographic area, and are the same class of crimes.

At trial, the jury found defendant guilty of three counts of second degree robbery and two counts of attempted second degree robbery.

## DISCUSSION

Defendant asserts that the trial court abused its discretion in consolidating the two cases prior to trial. Defendant also contends consolidation of the two cases resulted in an unfair trial because the evidence of the three robberies was not cross-admissible. We disagree. The trial court did not abuse its discretion and defendant received a fair trial.

## I

### *The Trial Court Did Not Abuse Its Discretion In Granting The Motion To Consolidate*

Defendant argues the trial court abused its discretion in consolidating the cases because the identification evidence was not cross-admissible. We disagree.

Penal Code section 954 permits consolidation of separate criminal cases where the accusatory pleadings charge "two or more different offenses connected together in their commission" or are "two or more different offenses of the same class of crimes or offenses." The trial court " 'in the interest of justice and for good cause shown, may, in its discretion,' " sever or consolidate different offenses. (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 281.) "The party seeking severance has the burden to establish a substantial danger of prejudice requiring the charges to be separately tried. [Citation.] Refusal to sever may be an abuse of discretion where . . . evidence of the crimes to be jointly tried would not be cross-admissible in separate trials . . . . If evidence on each of

6

the joined crimes would have been admissible in a separate trial of the other crimes, then such cross-admissibility ordinarily dispels any inference of prejudice." (*Gonzales and Soliz*, at pp. 281-282.)

Section 1101, subdivision (b), allows "the admission of evidence that a person committed a crime . . . when relevant to prove some fact (such as . . . identity . . .) other than his or her disposition to commit such an act." "[T]here exists a continuum concerning the degree of similarity required for cross-admissibility, depending upon the purpose for which introduction of the evidence is sought[,] . . . the highest degree of similarity is required to prove identity." (*People v. Soper* (2009) 45 Cal.4th 759, 776.) "For identity to be established, the uncharged misconduct and the charged offense must share common features that are sufficiently distinctive so as to support the inference that the same person committed both acts. [Citation.] 'The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature.' " (*People v. Ewoldt* (1994) 7 Cal.4th 380, 403.) "The inference of identity, moreover, need not depend on one or more unique or nearly unique common features; features of substantial but lesser distinctiveness may yield a distinctive combination when considered together." (*People v. Miller* (1990) 50 Cal.3d 954, 987.) We review a trial court's decision to consolidate separate counts for abuse of discretion "based on the record when the motion was heard." (*People v. Gonzales and Soliz*, *supra*, 52 Cal.4th at p. 281.)

At the hearing on the motion to consolidate, the People provided sufficiently distinctive evidence to support a reasonable conclusion that the robber in both cases was defendant. The People proffered that the robber who appeared in each of the three surveillance footage videos wore "identical clothing," used the same revolver gun, and held the gun in the same manner. The People also asserted the clothes defendant wore when he was admitted to a local hospital for a gunshot wound were taken by police as evidence and were identical to the clothes the robber wore. In addition to the physical evidence, the geographical proximity of the crimes and the fact the robberies occurred on

the same date both support an inference defendant committed all of the robberies. Taken together, the arguments presented by the People demonstrated a distinctive combination of features regarding defendant's identity that provided a sufficient basis for the trial court to grant the motion to consolidate.

II

*Consolidating The Cases Did Not Result In Gross Unfairness To Defendant*

Defendant contends consolidation of the two cases resulted in an unfair trial because the evidence of the three robberies was not cross-admissible. Defendant does not point to any objection he made *during* trial to the cross-admissibility of the evidence. In any event, we reject his argument -- the evidence *was* cross-admissible.

"[E]ven if a trial court's ruling on a motion to sever is correct at the time it was made, a reviewing court still must determine whether, in the end, the joinder of counts resulted in gross unfairness depriving the defendant of due process of law." (*People v. Gonzales and Soliz, supra*, 52 Cal.4th at p. 281.) However, " 'the difficulty of showing prejudice from denial of severance is so great that the courts almost invariably reject the claim of abuse of discretion.' " (*People v. Matson* (1974) 13 Cal.3d 35, 39.)

Here, had the trial court severed the charges, evidence of the separate robberies would have been admissible in separate trials pursuant to section 1101, subdivision (b), to prove identity. Although eyewitnesses at The Thrift Store and Taco Bell robberies did not provide as detailed testimony as the eyewitnesses in the Hites Market robbery, the surveillance footage of the robberies, police testimony, and defendant's inculpatory phone calls all reasonably supported the conclusion that defendant committed all three robberies.

In making his argument against cross-admissibility, defendant completely fails to mention that there was video surveillance footage corroborating eyewitness testimony for each robbery regarding his identity. Eyewitness testimony from The Thrift Store and Taco Bell robberies generally provided an accurate and similar description of the person who robbed each location. The eyewitnesses also identified defendant's bloodied hooded sweatshirt with the light colored logo on the left breast that police recovered from the Hites Market robbery, which police testified defendant wore in the other two robberies. More importantly, video surveillance evidence and police testimony indicating the perpetrator of all three robberies was defendant demonstrated that the various robberies shared sufficiently distinctive and common features. In the surveillance footage, the gun used in each robbery that day was a black "long barreled" revolver pistol that looked like a "cowboy gun," and the robber held the gun in a similar manner in each incident. Because the surveillance footage showed the robber using the same revolver pistol and wearing the same clothes in each of the three robberies, the evidence was sufficiently distinctive to prove identity.

The phone calls made by defendant while in custody, which defendant also fails to address in his brief, support the conclusion that defendant committed all three robberies and validate the eyewitness testimony and video surveillance evidence of the crimes. Defendant essentially admitted to being shot after he robbed Hites Market, discharging a firearm, and anticipating the police would link the three robberies together and charge him with crimes arising out of each robbery. When considered together with the other identification evidence, the phone calls support the inference that defendant committed all three robberies.

The cross-admissibility of the evidence of the three robberies dispels any inference of prejudice, and the trial court's consolidation of the cases did not result in any unfairness to defendant.

9

DISPOSITION

The judgment is affirmed.


      ROBIE      , Acting P. J.


We concur:


      BUTZ      , J.


      DUARTE      , J.